Argued May 7, reversed June 9, 1914.

## FIELDS v. CROWLEY.

(142 Pac. 360.)

**Pleading—Demurrer—Admissions.**

1. On demurrer to the complaint, the material allegations of that pleading are deemed admitted.

**Mortgages—Foreclosure—Rents and Profits.**

2. Under Section 252, L. O. L., providing that the purchaser of real property at an execution sale from the date of the sale till a redemption thereof shall be entitled to possession unless the property be in possession of a tenant, and in such case shall be entitled to the rents or the value of the use and occupation, and section 248, authorizing redemption by a judgment debtor on paying the amount of the purchase money, with interest at 10 per cent per annum, together with the amount of the taxes the purchaser may have been required to pay, where a purchaser at a mortgage foreclosure goes into possession and the property is afterward redeemed by the mortgagor, the mortgagor is entitled to the rents and profits received by the purchaser during possession.

[As to when a mortgagee is entitled to rents, see note in 27 Am. St. Rep. 793.]

From Grant: DALTON BIGGS, Judge.

This is an action by W. S. Fields and Jennie E. Fields against R. J. Crowley and A. J. Wright to recover rents, issues and profits amounting to $1,220.85. The court below rendered judgment in favor of defendants and plaintiffs appeal. The facts are stated in the opinion of the court.        REVERSED.

For appellants there was a brief over the names of *Mr. J. E. Marks* and *Mr. Errett Hicks,* with an oral argument by *Mr. Marks.*

For respondents there was a brief and an oral argument by *Mr. George H. Cattanach.*

In Banc. MR. JUSTICE RAMSEY delivered the opinion of the court.

The plaintiffs were at all the times stated in the complaint the owners of lots 84, 44, and 45 (except the

north 20 feet of lot 45) according to the official plat of the town of Canyon City, Grant County, Oregon, and also another parcel of land described in the complaint.

On December 3, 1910, the plaintiffs executed to the defendants a mortgage upon said real property to secure the payment of the sum of $1,700, which the plaintiffs owed the defendants. The plaintiffs made default in the payment of said sum of money, and on the 1st day of May, 1911, the defendants commenced, in the Circuit Court of Grant County, a suit against the plaintiffs for the foreclosure of said mortgage and the sale of said real property, to obtain funds to pay said debt of $1,700, and interest, costs, and disbursements.

On June 30, 1911, the Circuit Court of Grant County rendered a decree for the foreclosure of said mortgage and the sale of said real property, to obtain funds with which to pay the sum of $1,728.20, due on said mortgage, and $72.30 that the said mortgagee had paid as taxes on said property, and $170, allowed as attorneys' fees, and the further sum of $21.50 costs.

On November 22, 1911, a writ of execution was issued out of said Circuit Court upon and to enforce said decree of foreclosure and sale; and on December 29, 1911, by virtue of said decree and said writ of execution, all of said real property was sold to the said mortgagees (the defendants herein) for the sum of $1,786, and the sheriff making said sale, thereupon issued to said purchasers a certificate of sale of said real premises.

On February 27, 1912, said sale to the defendants herein was confirmed by an order of said Circuit Court, and, on or about the last-named date, the defendants took possession of said real property by them

so purchased, and held the same, and continued in the possession thereof, until December 23, 1912. There were situated upon said real property, while the same was in the possession of the defendants as aforesaid, and prior thereto, what is known as the Elkhorn Hotel building, a saloon building, a barn, and other outbuildings belonging to said hotel property. While the defendants were so in the possession of said real property, they used, occupied, and rented the saloon building situated thereon, and used, occupied and rented said hotel building, barn, and outhouses connected therewith, and conducted on said premises a hotel business, and the defendants received all the rents, issues and profits of all of said property, to the amount and value of $1,220.85, and the reasonable rental value of said hotel building, saloon, barn, and outhouses during said period was the said sum of $1,220.85.

On December 23, 1912, after notice to the defendants that they intended to do so, the plaintiffs redeemed said property from said sale, by payment to the sheriff of said county of the sum of $2,047.94, which was the total amount due the defendants on said sale, and the defendants thereupon immediately surrendered the possession of said property to the plaintiffs on said 23d day of December, 1912.

The defendants, on the 22d day of December, 1912, at the time of said redemption of said property, did not account to the plaintiffs for said rent, issues, and profits and reasonable rental value of said property which they had been in possession of, and there was due and owing from the defendants to plaintiffs, on said last-named date, the said sum of $1,220.85 as the rents, issues, and profits and reasonable rental value of said property while the same was used, occupied,

and rented by the defendants while in their possession under said sale.

Since the redemption of said property the defendants have not accounted to the plaintiffs for the rents, issues, and profits or reasonable rental value of said property, or any part thereof, while the same was in their possession, under said sale, and on the 20th day of December, 1912, the plaintiffs made demand upon the defendants and each of them, for the payment of the said sum of $1,220.85 as the rents, issues, and profits and reasonable rental value of said property during said period, and the defendants refused, and still refuse, to pay the plaintiffs the said sum or any part thereof, and there is now due and owing from the defendants and each of them, to the plaintiffs, the sum of $1,220.85, with interest thereon from December 23, 1912, at the rate of 6 per cent per annum.

The complaint alleges the facts stated *supra,* and demands judgment for said sum of $1,220.85, interest, costs, and disbursements. The defendants filed a demurrer to said complaint, alleging that it does not state facts sufficient to constitute a cause of action. The court sustained the demurrer, and entered judgment against the plaintiffs for costs and disbursements. The plaintiffs appeal, and contend that the trial court erred in sustaining said demurrer.

1. The real property referred to *supra* belonged to the plaintiffs; they mortgaged it to the defendants; the defendants foreclosed the mortgage and bought the mortgaged property; the sale was confirmed on February 27, 1912; and at that date the defendants took possession of the property and occupied and rented it, and held the property until it was redeemed from the effect of said sale on December 23, 1912. The defendants occupied, used, and rented the premises

from February 27th, until December 23d, nearly ten months, and received the rents, issues, and profits thereof during that period, and refused to account to the plaintiffs therefor, or for any part thereof, according to the averments of the complaint. There were on the premises a hotel building, a saloon building, a barn, and other outbuildings. On demurrer to the complaint the material allegations of that pleading are deemed admitted.

2. The question for decision is whether the defendants are liable to the plaintiffs for the rents, issues, and profits of the property during the time that they had possession of it and occupied and rented it, between the date of the confirmation of the sale and the redemption of the property from the effect of the sale.

Section 252, L. O. L., provides that the purchaser of real property at an execution sale, from the date of the sale until a redemption thereof, shall be entitled to the possession of the property purchased, unless the same be in the possession of a tenant, holding under an unexpired lease, and, in such case, shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof.

Section 248, L. O. L., provides that a judgment debtor may at any time before a confirmation of sale, or within one year after confirmation, redeem the real property sold on execution sale on paying the amount of the purchase money, with interest thereon at the rate of 10 per cent per annum from the date of the sale, together with the amount of taxes that the purchaser may have been required to pay thereon. On the redemption the purchaser obtains all of the money that he paid for the property and interest thereon from the date of the sale until the redemption at the rate of 10 per cent per annum. If he has paid any

taxes on the property, he receives that back also. The debtor redeeming is required to pay him what he gave for the property, *plus* the interest thereon at the rate of 10 per cent per annum, the highest rate of interest allowed by law.

Freeman, in his work on Executions (3 ed.), Volume 3, pages 1893, 1894, says:

"The controlling idea of the statutes regulating the rights of judgment debtors and purchasers in and to the rents, profits, and possession of land from its sale on execution until its redemption, or until the expiration of the period of redemption, is that judgment creditors are entitled to, and should receive, no more than their debts, with interest and proper charges. Any deviation from this idea must entail injustice upon one or the other of these classes."

2 Jones, Mortgages (6 ed.), page 15, says:

"If the purchaser at a foreclosure sale has paid the purchase money, and there is a subsequent redemption, his rights are determined by treating him as a mortgagee in possession to the extent of the price paid by him with interest, *and must account for the rents and profits.*"

In *Balfour* v. *Rogers* (C. C.), 64 Fed. 927, BELLINGER, District Judge, says:

"The statute provides that 'the purchaser from the day of sale until a resale or a redemption, * * shall be entitled to the possession of the property purchased or redeemed, unless the same be in the possession of a tenant under an unexpired lease, and in such case, shall be entitled to receive from such tenant the rents or the value of the use and occupation thereof during the same period.' The right to receive rents and profits under this section does not imply that what is thus received need not be accounted for in case of redemption. In *Cartwright* v. *Savage,* 5 Or. 397, it is held that, when a judgment debtor redeems, he may recover the value of a crop growing upon the land at

the time of the sale and harvested by the purchaser while in possession. It follows that the product of the property must in all cases be accounted for to the redemptioner. It is not the policy of the statute to give the creditor more than his debt, with interest and proper charges.''

Discussing the effect of a sale and a redemption of real property, the Supreme Court of Arkansas, in *Danenhauer* v. *Dawson*, 65 Ark. 133 (46 S. W. 132, 44 L. R. A. 193), says:

''Such a purchaser occupies a double character, and may come to be treated either as a mortgagee in possession or as a holder of an absolute title, depending on whether there has been a redemption or not. To speak more accurately, he holds as purchaser; but, if there be a redemption, his rights will be determined by treating him as a mortgagee, to the extent of the price paid by him. If the mortgagor redeems, the defeasible title of the purchaser is abrogated. The purchaser will then, for the purpose of redemption, be treated as a mortgagee in possession, and will be entitled to the price paid by him, with interest, and must account for the rents and profits. But if no redemption is made, then at the end of the period allowed for redemption the title of the purchaser becomes absolute,'' etc.

17 Cyc. 1337, says:

''Under statutes giving to the execution purchaser the right of possession of the property, and the rents and profits from the day of sale until the redemption of the property, such purchaser must account to the redemptioner for the rents and profits thus by him received during the interim between the sale and the redemption.''

In *Cartwright* v. *Savage*, 5 Or. 399, the court says:

''It is clear that Savage [the purchaser at execution sale] was entitled to the possession of the property. * * By virtue of this right of possession, a purchaser

at a judicial sale may enter and use and occupy the premises, and thereby preserve the premises intact, and better prevent waste and destruction. If the premises are agricultural lands, the use must be for such ordinary purposes of husbandry as the premises could be put to during the time of his possession. He has no absolute legal right in and to the premises, until the confirmation of the sale, and the execution of a deed by the sheriff. It is well settled that, if redemption be consummated, the effect of the sale is terminated, and the property is restored to its original condition. How can the property be restored to its original condition if, when redeemed, the judgment debtor is obliged to take it back, denuded of the crops which he himself has sown, and which * * he himself would have reaped? We do not think that the section above quoted can properly be construed to give the purchaser any greater rights in the premises, in case there is no tenant, than where there is a tenant holding under an unexpired lease.''

In that case the court held that the redemptioner had a right to recover from the purchaser the value of the crop harvested on the premises between the date of the sale and the redemption. It is the policy of the law to enable the purchaser to obtain from the redemptioner the full amount paid by him for the land, *plus* the highest rate of interest thereon allowed by law from the date of the payment until the redemption. But, where the purchaser takes possession of the purchased premises, and occupies, uses, or rents them, and the execution debtor redeems, the latter is entitled to recover from him the value of the rents, issues, and profits of the premises during the time that he has occupied, used, or rented them in the interim between the date of the sale and the redemption.

A different rule obtains in California, Washington, and some other states; but we think that the rule an-

nounced by this court in *Cartwright* v. *Savage, supra,* is the better one, and we affirm and follow it.

We hold that the complaint states facts sufficient to constitute a cause of action, and that the trial court erred in sustaining the demurrer thereto.

The judgment of the court below is reversed and the case is remanded to the court below, with directions that it overrule said demurrer and proceed with the case in accordance with the conclusions of this opinion.               REVERSED WITH DIRECTIONS.